UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINA MIESS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:09CV1124 CDP |
| | ) | |
| PORT CITY TRUCKING, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

When lawyers commit ethical violations and are fired by their client, are they still entitled to a fee when the former client ultimately settles the case?

As with many legal questions, the answer is, "It depends."  Complete forfeiture of a fee is only warranted if the ethical violation is so serious that it destroys the client-lawyer relationship; otherwise the attorney is entitled to reasonable compensation for services rendered.

In this acrimonious dispute arising out of a tragic traffic accident, I conclude that Christina Miess's former counsel, Don Trotter and J. Michael Riehn, are entitled to a limited fee of 8% of Miess's recovery.  Trotter and Riehn represented Christina Miess for 16 months following the wreck that killed her three daughters and seriously injured her.  They performed an initial investigation of the accident, spoke with Miess many times, negotiated with the trucking company, and

prepared and filed suit.  In doing so they conferred a benefit on their client, and she had agreed to compensate them for their services before she fired them.

But Miess's new attorney performed most of the work on the case – hiring expert witnesses, participating in discovery, negotiating the ultimate settlement. And Trotter and Riehn violated the Missouri Rules of Professional Conduct in several ways.  They are only entitled to fees based on the work they did, not based on the contingency contracts.

Trotter and Riehn violated the following Rules:

Rule 4-1.5 – Trotter's contingency fee agreements did not comply with the rules and were far from sufficient; Riehn had no contingency fee agreements with the client; and Trotter agreed to share his fee with Riehn but failed to obtain consent from the client in writing.

Rule 4-1.4(a) – They failed to provide Miess with a copy of the contracts she signed even when she made repeated requests.

Rule 4-1.7 – They represented two clients with conflicting interests (Miess and Mark Barton, the father of one of the deceased children) without obtaining informed consent in writing;

Rule 4-1.9(a) – After they were fired they violated the duty owed to Miess as a former client by continuing to represent Barton, whose interests they knew would conflict with Miess's in any apportionment proceedings.

- 2 -

Rule 4-1.16(a) – They failed to withdraw from this case after Miess fired them, and in fact, filed a written opposition to her motion to disqualify them.

## **Background**

On March 20, 2008, a tractor-trailer truck driven by defendant Alvin Lewis (owned by defendant Port City Trucking, Inc., a subsidiary of defendant Mars, Inc.) ran into the back of a car that had been stopped by a flagman because of road construction. Three children in the car were killed, and their mother, plaintiff Christina Miess, suffered a broken neck and other injuries. Plaintiff Mark Barton was driving and suffered a head injury. Barton was the father of one of the children and lived with Miess. One witness reported that the force of the impact was so strong, and the damage to the Miess car so great, that the initial rescuers did not even realize that the children were in the vehicle.

The next day, March 21, one of Miess's family members contacted attorney Al Don Trotter, and Trotter visited Miess and Barton at the hospital to speak about the accident. On March 22 Trotter returned to the hospital and brought attorney James Michael Riehn with him. Trotter and Riehn spoke to Miess and Barton, and then the couple signed separate contingency fee contracts with Trotter.

Miess testified that she remembers nothing from the March 21 meeting and that she did not remember signing any contracts at the hospital. She testified that she and Barton had not reached any agreement at that time about how they would

share proceeds from any claim related to their deceased daughter.  Barton, Trotter, and Riehn testified that before the contracts were signed Miess and Barton had reached an agreement that they would divide equally any wrongful death settlement or judgment.  Barton had been driving without a valid license, and Trotter testified that he discussed Barton's potential liability with Miess; Trotter said he had determined that Barton had no liability because the car was not moving when the truck hit it.

Barton and Trotter testified that Miess was coherent when the contingency fee contracts were executed and that she understood the discussions the day before.  Miess's  medical records from March 21 say:  "Patient keeps her eyes closed - doesn't answer - she states she doesn't remember anything - doesn't know why she is here  . . .  Grief - Shock - Emotionally distraught - unable to function."  She was being given hydrocodone, lorazepam, and morphine, among other medications.  Miess had still been breast feeding the youngest deceased child; Trotter testified that he knew she was in significant pain from lactation.  Miess was still taking morphine when she signed the contract.

Trotter and Riehn investigated the scene and communicated with Port City about its insurance coverage.  They resolved Miess's property damage claim related to the car.  On July 10, 2008, Port City offered the rest of its policy limits to settle all remaining claims arising from the accident, including Miess's personal

- 4 -

injury claim, Barton's personal injury claim, and the wrongful death claims for the three children.  This offer was rejected.

Trotter and Riehn did not file suit until June 16, 2009, more than a year after the wreck.  Before filing suit they performed research and developed a theory for suing the parent company.  But even before suit was filed, Miess and Barton had broken up and Miess had moved out of the residence she and Barton had shared with the children before the accident.  On March 10, 2009, Miess directed Riehn to ask Barton to agree to divide any wrongful death settlement or judgment so that she would receive 60% and Barton would receive 40%.  Barton refused to agree to that division, but Riehn never notified Miess of that until after she had fired him. Between the wreck and August of 2009, when Miess terminated Riehn and Trotter, she spoke with the attorneys frequently.  Riehn testified that she called wanting money, which they could not ethically advance to her.  Miess testified that she called wanting information about when the suit would be filed.  She asked for a copy of her contract with them numerous times but they never provided it. She testified that Riehn was pressuring her to agree to share any wrongful death proceeds on a 50/50 basis with each of the fathers, which she did not want to do, because the other two fathers were behind in child support and were not active in the children's lives.

Less than two months after the suit was filed, Miess contacted Aaron Sachs & Associates, PC.  She said she wanted to fire her attorneys.  On August 17, 2009, Miess informed Riehn, in a signed and notarized writing, that she was discharging him and asked him to send her file to Aaron Sachs.

Trotter and Riehn then sent a letter to Sachs and his co-counsel Joel Block asserting an attorney lien for one-third of the outstanding settlement offer made by Alvin Lewis and/or Port City Trucking, Inc.  They sent a similar letter to the defendants' counsel, asserting a one-third interest in any amount recovered in any way in conjunction with the accident in question by Miess or Barton individually, Miess as the children's natural mother, and Barton as one child's natural father. On August 26, 2009, Riehn wrote another letter to counsel for the defendants claiming he had incurred $2784.67 in expenses.

When Trotter and Riehn failed to withdraw as counsel in this case, Miess filed a *pro se* motion to disqualify them.  In the motion she alleged, among other things, that Trotter and Riehn harassed her and her family with numerous telephone calls and messages after she discharged them, and that they failed to comply with her written instructions to forward her file to Sachs.   A week later Trotter and Riehn filed a brief in opposition to the motion to disqualify them as counsel.  I granted the motion over their objection, and around the same time they provided their file to Sachs.

- 6 -

Eventually all three fathers intervened as plaintiffs in the action.  Riehn and Trotter were still acting as counsel for Mark Barton, and Miess moved to disqualify them, asserting that they were violating Missouri Supreme Court Rule 4.1-9 because she was a former client whose interests were adverse to Barton's and she did not consent to the representation.  I agreed and granted the motion to disqualify because that Barton and Miess's interests would compete with one another at the apportionment phase.

The case ultimately settled with all defendants.  Miess then moved to vacate any liens that Trotter and Riehn might assert and sought an order that they had forfeited any attorneys fees.  Trotter and Riehn continue to assert entitlement to one-third of any recovery Miess receives.  After I approved the settlement agreement, I heard evidence on this motion regarding fees.

## Discussion

Under Missouri law, a client may discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services.  Mo. Rules of Prof'l Conduct 4-1.16(c), cmt. 4.  Complete forfeiture of attorney's fees is warranted "only when a lawyer's clear and serious violation of a duty to a client is found to have destroyed the client-lawyer relationship and thereby the justification for the lawyer's claim to compensation."  *Int'l Materials Corp. v. Sun Corp.*, 824 S.W.2d 890, 895 (Mo. 1992).  "Considerations relevant to the question of

forfeiture include the gravity and timing of the violation, its willfulness, its effect on the value of the lawyer's work for the client, any other threatened or actual harm to the client, and the adequacy of other remedies." Restatement (Third) of Law Governing Lawyers § 37 (2000).

Under Missouri law, a trial court may determine the validity of an alleged attorney lien. *Reed v. Garner Indus., Inc.*, 832 S.W.2d 945, 949 (Mo. Ct. App. 1992). The trial court also has wide latitude in determining the appropriate method for enforcement of an attorney lien. *Plaza Shoe Store, Inc. v. Hermel, Inc.*, 636 S.W.2d 53, 58 (Mo. 1982) (quoting *Satterfield v. S. Ry. Co.*, 287 S.W.2d 395 (Mo. Ct. App. 1956)).

Miess claims Trotter and Riehn violated the Missouri Rules of Professional Conduct and completely forfeited their claim to fees because they improperly solicited her business in person, entered into a contract with her while she was incapacitated, entered into contracts with Barton and her despite a concurrent conflict and without informed consent, refused to provide her with copies of her contract, refused to follow her wishes by insisting on an agreement with the fathers of her children, refused to withdraw from representing her after being discharged, refused to turn over her files to Sachs, and harassed her after she discharged them. The evidence before me shows that Trotter and Riehn did violate the Missouri Rules of Professional Conduct in some, but not all, of these respects. I conclude

- 8 -

that complete forfeiture is not warranted because of the timing of the violations,

the value Trotter and Riehn's services conferred to Miess, and the adequacy of

recovery of attorneys' fees based on quantum meruit as an alternative remedy.

1.    The Contracts

Neither Trotter nor Riehn violated the rules on in-person solicitation

because a member of of Miess's family contacted Trotter and requested his

presence at the hospital.  Additionally, whether Miess was incapacitated when she

signed the contingency fee contracts is not determinative here because, as

discussed below, even if she was, Trotter and Riehn provided valuable services to

her for approximately 16 months following the initial communication.  Thus, even

if she does not owe them a fee under those contracts, her acceptance of their

services establishes an implied contract.

Both lawyers concede that they violated the rules regarding contingency fee

arrangements set forth in Missouri Rule of Professional Conduct 4-1.5(c) and (e).

Under subsection (c), "[a] contingent fee agreement shall be in writing signed by

the client and shall state the method by which the fee is to be determined,

including  . . . litigation and other expenses to be deducted from the recovery; and

whether such expenses are to be deducted before or after the contingency fee is

calculated."  Trotter's contracts did not describe the expected expenses or address

whether expenses should be deducted before or after calculating the contingent fee.[1]

Riehn also violated subsection (c) because he had no written continency fee contract with Miess at all, and Miess's contract with Trotter does not mention Riehn.  Further, Trotter and Riehn had no writing regarding their fee sharing agreement.  Under subsection (e), "division of a fee between lawyers who are not in the same firm may be made only if . . . the client agrees to the association and the agreement is confirmed in writing."  And of course, neither Trotter nor Riehn obtained such consent in writing or explained their fee sharing arrangement to Miess.  As such, both attorneys violated subsection (e).

Trotter and Riehn also failed to provide Miess with copies of her contracts when she requested them, which is another violation of the Rules of Professional Conduct.  Under Rule 4-1.4(a), "[a] lawyer shall . . . promptly comply with reasonable requests for information."   Clients are entitled to copies of their contracts, they should not have to ask for them repeatedly, and if they do ask, counsel must provide them.

---

[1]Riehn filed an affidavit stating that Trotter met with Miess and Barton later at a food court and obtained their signatures on additional contingency fee contracts.  No such contracts have ever been produced and at the hearing Trotter said that he only "thought" there were additional contracts.  Riehn's affidavit was hearsay and Trotter's testimony was, at best, equivocal.  I find that no such contracts ever existed.

2.     Conflict of Interest

Trotter and Riehn also violated Missouri Rule of Professional Conduct

4-1.7.   Rule 4-1.7(a) provides that "a lawyer shall not represent a client if the

representation involves a concurrent conflict of interest . . . [which] exists if the

representation of one client will be directly adverse to another client."  However,

Rule 4-1.7(b) allows concurrent representation if, among other things, "each

affected client gives informed consent, confirmed in writing."  Here, an inevitable

conflict of interest between Miess and Barton was present at the outset because

Barton was driving without a license when the accident occurred and so he had at

least theoretical liability to Miess, they were both injured in the accident and so

might be competing for a limited amount of insurance coverage, and they shared a

child who died in the accident and so might have competing claims under the

wrongful death statute.

Of course, it is not uncommon for an attorney to represent multiple family

members injured in the same wreck, or to represent multiple claimants in a

wrongful death action, but to do so ethically the lawyer must obtain informed

consent in writing from the clients.  Trotter and Riehn concede that they violated

the rule by not obtaining informed consent in writing, but they claim that they did

discuss all these matters with their clients when they met in the hospital.  Trotter

testified that he considered whether Barton might be liable and concluded he

- 11 -

would not.  They both testified that when the contingency fee contract was

executed Miess and Barton had agreed that they would divide any settlement or

judgment related to their daughter's death equally.

Even if Trotter and Riehn had discussed the initial conflict with Miess and

the parties had come to an oral agreement on all conflict issues, the Rules require

that the agreement be in writing.  Additionally, there can be no doubt that Miess

was distressed in the days after the wreck – Trotter testified that there was much

crying during the meetings and that she was in obvious pain.  The conflicts and

potential conflicts here are not simple, but even if Miess understood it all at the

time she signed the contract – which is doubtful – later developments required

Trotter and Riehn to revisit the issue.

Miess and Barton split up not long after the wreck.  Even before they filed

the lawsuit, Trotter and Riehn knew that Miess and Barton had a conflict about the

division of proceeds, because Miess had proposed the 60/40 split, and not the

50/50 split that the lawyers say she agreed to earlier.  Certainly at that point the

lawyers knew they were representing clients with conflicting interests, but they did

nothing to remedy the situation.

And when Miess discharged Trotter and Riehn, their representation of

Barton became prohibited by an entirely different rule, as discussed in more detail

in my order of June 14, 2010 [docket entry # 79].  *See* Mo. Rule of Prof'l Conduct

4-1.9(a) ("a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing").  At no point did Trotter or Riehn secure the required informed consent in writing that could have cured the conflict of interests.

3.   <u>Disagreements over Strategy and Failure to Withdraw</u>

Miess alleges Trotter and Riehn refused to follow her wishes when they insisted that she negotiate with her other children's fathers.  Riehn testified that he and Trotter believed demonstrating a "united front" was the best way to maximize recovery for all plaintiffs, including Miess.  He testified that he pressed the issue because it was in Miess's best interests.  A disagreement about litigation strategy is not uncommon.  The Rules of Professional Conduct would prohibit Trotter or Riehn from entering into an agreement with the fathers absent Miess's consent, but neither did so.  Riehn claims his advice to Miess was what he believed was best for her and the evidence in the record does not suggest otherwise.  Because no agreement with the fathers was actually reached while Trotter and Riehn were representing Miess, Riehn's advising Miess to present a "united front" is insufficient to warrant forfeiture of attorneys' fees.

Finally, Miess alleges Trotter and Riehn should forfeit their fees because they refused to withdraw from representing her after being discharged, harassed her after she discharged them, and did not turn over her files to Sachs.  Under Missouri Rule of Professional Conduct 4-1.16(a), "[a] lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation if . . . the attorney is discharged."  Subsection (d) goes on to state that "[u]pon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . surrendering papers and property to which the client is entitled."  On August 17, 2009, Miess informed Riehn, in a signed and notarized writing, that she was discharging him and asked him to send her file to Sachs.

Riehn and Trotter were obligated to withdraw from the case and to provide the files to Miess and her new lawyer.  They did not do so.  Of most concern to me, they actually filed a brief opposing her motion to disqualify them.  In that brief they "denie[d] each and every allegation" in the motion – in other words, they denied that she had discharged them.  If their purpose in filing this document was really just to assert their attorneys' lien, they chould have said so.  Instead they essentially accused their client (or former client) of lying and concluded by saying that "counsel prays for the Court to deny Plaintiff's Motions to Disqualify . . ." This is a clear violation of Rule 4-1.16(a).

4.    <u>The Remedy</u>

Despite these violations, attorneys Riehn and Trotter provided valuable

services to Miess.  While ultimately the attorney-client relationship between them

ended, I cannot say that it ended because of the ethical violations.  Rather, it ended

because Miess became dissatisfied with their representation of her.  But even in the

absence of proper contracts, an implied contract between Miess and the attorneys

existed based on their interaction.  "A promise to pay the reasonable value of the

attorney's services is implied where there is no express contract, if the services are

accepted by the client or rendered at his request."  *Craig v. Jo B. Gardner, Inc.*,

586 S.W.2d 316, 325 (Mo. 1979).

Although Trotter and Riehn have violated ethical rules, no violation

destroyed the attorney-client relationship warranting complete forfeiture of

attorneys' fees.  If complete forfeiture is not warranted, but the attorney has not

fulfilled the terms of a contingency fee contract, "contract recovery is not proper . .

. the lawyers' only recovery could be in quantum meruit for benefits conferred."

*Int'l Materials*, 824 S.W.2d at 895.  A quantum meruit analysis is employed

because "requiring payment of the contracted contingent fee regardless of the

posture of the case at the time of discharge, [would be] patently unfair to clients,

particularly where the client truly has lost faith in the attorney."  *Plaza Shoe*, 636

S.W.2d at 58.  An attorney's "right to compensation is always limited to the extent

necessary to protect the client's freedom to change counsel." *Int'l Materials*, 824 S.W.2d at 895.  "The economics of paying a discharged attorney the full contract price, and then hiring another attorney to continue his work, may be prohibitive. This danger is especially apparent in contingency fee situations, where 'each' attorney may receive a large percentage of the client's final recovery." *Plaza Shoe*, 636 S.W.2d at 58.  In addition, clients should not have to pay for duplicative service, and, as in all cases relating to quantum meruit, the services must have enriched the client in the sense of benefits conferred.  *Int'l Materials*, 824 S.W.2d at 895.

To sustain a claim for legal fees based on quantum meruit, the attorney or attorneys seeking the fee must shoulder the burden of proving the reasonable value of services performed.  *Reid v. Reid*, 906 S.W.2d 740, 743 (Mo. Ct. App. 1995). In making the determination of what constitutes a reasonable attorney fee, consideration is given to:  (1) the time, nature, character, and amount of services rendered; (2) the nature and importance of the litigation; (3) the degree of responsibility imposed on or incurred by the attorney; (4) the amount of property or money involved; (5) the degree of professional ability, skill, and experience called for and used; and (6) the result achieved.  *Id.*  Recovery is limited to "the reasonable value of services rendered, not to exceed the contracted fee, and

payable only upon the occurrence of the contingency." *Plaza Shoe*, 636 S.W.2d at 60.

Trotter and Riehn testified about what they did in the case, although no one attempted to quantify the time they spent. While I do not know how many hours Trotter or Riehn spent, "it has been held that time taken to perform the service is only one element considered and is only of minor importance." *Craig*, 586 S.W.2d at 326 (quoting *Scott v. Home Mut. Tel. Co.*, 510 S.W.2d 793, 795 (Mo. Ct. App. 1974)). The attorney-client relationship between Miess, Trotter, and Riehn went on for 16 months. Trotter and Riehn handled the initial investigation, the initial settlement offer, and filed the lawsuit itself, which required some legal research. Miess's attorney argues that the trucking company's offer of its policy limits in the case was not the result of any legal work by Trotter and Riehn, but was to be expected in a case like this. I agree that this offer probably would have been made no matter what the quality of the legal work, given that the truck hit a stopped car in a construction zone and killed three people, but some legal work was required. Neither Trotter nor Riehn, however, took on any significant financial risk by representing Miess.

Although they provided some value to Miess, Trotter and Riehn have also caused Miess significant trouble, considering their violations of the Rules of Professional Conduct detailed above. Additionally, Miess testified that Riehn

- 17 -

yelled and cursed at her.  I give significant credit to her testimony on that point,
considering the hostility Riehn displayed in my courtroom.  While Miess may have
been a demanding client and may have called Riehn's office more than many
clients, tragic cases often create difficult clients.  Trotter and Riehn knew when
they took this case that they would be dealing with a mother who had lost three
children and suffered serious injury herself and who would probably be
emotionally distraught throughout the representation.  Dealing with her
professionally and within the bounds of the Rules of Professional Conduct is the
least of what they were required to do as "Attorneys and Counselors at Law."

      The case has now settled, but before it did Miess's new counsel undertook
significant expense and did significant work.  They hired expert witnesses,
participated in depositions and other discovery, and ultimately achieved a
favorable settlement  above the offer initially obtained by Trotter and Riehn.  They
will spend additional time and effort in resolving the remaining apportionment
disputes, which I have discussed in more detail in a second order being issued
today.

      Trotter and Riehn requested one-third of Miess's total settlement, but they
only handled the initial stages of the case.  Far more benefit was provided by the
new counsel.  Because Sachs's firm handled the bulk of the work on the case, I
conclude that Trotter and Riehn are entitled to a fee of 8% of Miess's recovery

(with the percentage to be calculated after deduction of the litigation expenses incurred by new counsel).

I will also decline to award Trotter or Riehn any expenses.  The faulty written contract Miess had with Trotter failed to indicate whether the expenses would be deducted before or after the contingency fee was calculated, which I will construe against the drafter; and attorney liens are inapplicable to the vast majority of expenses Trotter or Riehn could validly assert, MO Prac. Series § 2.15 Liens; *see also Kimmie v. Terminal R. Ass'n of St. Louis*, 126 S.W.2d 1197, 1199 (Mo. 1938) (attorney liens are limited to fees and do not include expenses).

Accordingly,

**IT IS HEREBY ORDERED** that:

1.    Miess's motion to vacate liens and forfeit attorneys' fees of Riehn and Trotter [#105] is granted in part and denied in part.  Trotter and Riehn's recovery is limited to 8% of the amount Miess recovers from the defendants on any pending claim concerning the accident in question.

2.    Miess's motion to strike [#148] is denied.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 8th day of February, 2012.