UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTINA MIESS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:09CV1124 CDP |
| | ) | |
| PORT CITY TRUCKING, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

The plaintiffs and defendants settled this personal injury and wrongful death case, but the various plaintiffs have not agreed on several amounts to be apportioned among them.  The case arises out of a motor vehicle accident in which three children were killed when the car they were in was hit by a tractor-trailer truck.  Plaintiffs are the mother of the three deceased children, Christina Miess, and the three fathers of the children, Mark Barton, William Scheider, and Richard Huffman.  Miess and Barton were in the vehicle and were injured in the wreck. Defendants are the trucking company and its parent corporation and the truck driver.  I previously approved the total amounts of the settlement to be paid by all defendants to all plaintiffs.  I also approved the distributions that had been agreed upon, as well as the method agreed to by the parties for resolving the remaining disputes.  The plaintiffs indicated at the hearing that they would mediate their

remaining  apportionment disputes, and if they were unable to reach agreement, they would ask the court to hold a hearing to resolve the issues.

Several apportionment issues are not disputed.  Miess and Barton have agreed on the apportionment of the portion of the settlement related to the wrongful death of their child.  They have not, however, resolved how the amount set aside to settle their own personal injury claims should be divided between them.  Miess and Scheider agreed that Miess would get a portion of the settlement attributed to the wrongful death of their child and that the remaining portion would be apportioned between them by negotiation or by the court.  Miess and Huffman had a similar agreement related to the settlement amounts attributed to the wrongful death of their child.  Thus, some amounts to be paid to Christina Miess and Mark Barton are undisputed.  Although the agreement provided that undisputed amounts would be paid upon the Court's approval and the plaintiffs' execution of the documents, and although my earlier order required plaintiffs to execute the agreements, one of the fathers, Richard Huffman, has refused to do so.

Because no agreement has been reached on the remaining apportionment issues, an apportionment hearing is necessary.  The fathers seek extensive discovery from Christina Miess, going to her medical condition, her income, her employment, and her fitness as a mother.  Miess argues that discovery is closed.  I

believe that only very limited documentary discovery is needed, and that allowing that discovery is in the interests of justice.

I will set an apportionment hearing and will provide the parties with sufficient time to produce the limited discovery described below.  Additionally, I am today entering a separate order related to the claimed attorney liens of Miess's former attorneys.

### Huffman's Failure to Execute the Agreement

In the settlement agreement that I approved on July 22, 2011, plaintiffs agreed to release the defendants for the total settlement amount.  As stated above, the even though all apportionment issues were not resolved, there are undisputed amounts payable to both Christina Miess and Mark Barton, which the agreement said would be paid – at least in part – before the final apportionment.  Richard Huffman has refused to provide his signed agreement, which has prevented the undisputed payments from being made.

I entered an order approving the settlement on July 22, 2011.  All parties were represented at the hearing and all parties agreed that the form of the proposed order was correct and that it should be entered.  The order, in conjunction with the agreement, allowed the undisputed amounts to be paid even while the negotiations about apportionment of the other amounts continued, subject to the plaintiffs executing the agreement:

The proposed settlement, as set forth in Exhibit 1, is approved, and the Plaintiffs are hereby *authorized and directed to execute the Confidential Settlement and Release* . . . The proposed confidential settlement, as set forth in Exhibit 1, is hereby approved, and IT IS HEREBY ORDERED that:  Plaintiffs Christina J. Miess, Mark Barton, Richard Huffman and William Scheider shall receive respective portions of the settlement *after their respective portions are determined* in accordance with the provisions for resolution set forth in the Confidential Settlement Agreement and Release, and upon receipt of their respective portions, acknowledge satisfaction thereof.

July 22, 2011 order [docket entry # 139] (emphasis added).

At the hearing I had the following exchange with the parties, clarifying that, in fact, the parties wanted the total settlement to be approved and that they agreed that the undisputed amounts would be paid promptly:

THE COURT:  And Mr. Kurth, okay.  Let's deal with the wrongful death settlement issue first, and let me ask, it's a little unusual.  I mean, we got word that the case had settled, and I knew I would need to approve it, and then somebody called and said we want you to approve it even though we don't have all the distribution worked out . . .

MR. BLOCK:  Judge, at mediation on June 2nd, we reached an agreement between plaintiffs and defendants to resolve the wrongful death claims, and then we also resolved probably about half of the claims among the [plaintiffs], and those remaining claims are going to be mediated again on August 8th.

THE COURT:  Okay, so what is it you're asking me to do today?

MR. BLOCK:  Approve the total settlement between the plaintiffs and the defendants.
. . .

- 4 -

THE COURT:  Right. I have one of them is a judgment and order to approve the settlement, but I can't order a judgment until the other apportionments are done.

MR. BLOCK:  We feel you can based on what we have accomplished so far.  We tried to work on the wording of the judgment to accomplish that, so that *we can release undisputed money now with your order and then we can come back and resolve the other ones later.*  That's our position.

THE COURT:  I think I can enter an order approving it, but I don't think I can enter a judgment.  A final judgment?  Nothing is final until you have that worked out or we have a hearing, is it?  Does anybody want to jump in on that?  I can't have a final judgment until we have the apportionment among the plaintiffs, right?

MS. STEVENSON:  And Your Honor, *I think that the parties are in agreement that an order is sufficient at this time so that the undisputed funds can go ahead and be released*, and then once the allocation and the rest of the claims are resolved, then there would be a final order and judgment that the parties would request that the Court enter.
. . .

THE COURT:  Okay.  *The defendants are willing to release some of this money based on my order approving the total amount of settlement even though there wouldn't be a final judgment?*

MS. STEVENSON:  *Yes, Your Honor, and my clients specifically have requested to do it in this order.*

Transcript of July 22, 2011 hearing [docket entry # 145, at pp. 3 - 5] (emphasis added).  Attorney of record for the fathers, Chandler Gregg, specifically stated at the hearing that the fathers had consented to the Agreement's terms.  Transcript, at pp. 20-21.

- 5 -

After the hearing Miess, Scheider, and Barton delivered their signed agreements to the defendants.  Gregg, however, told the parties that Huffman had directed him to withhold his signature until after an apportionment hearing.  Miess then filed a motion to enforce my order approving the settlement, arguing that it required Huffman to execute the Agreement and deliver his signature to the defendants immediately.

When a settlement agreement's terms are clear and unambiguous, a federal district court has inherent power to enforce it as a matter of law.  *Barry v. Barry*, 172 F.3d 1011, 1013 (8th Cir. 1999) (citing *Gatz v. Sw. Bank of Omaha*, 836 F.2d 1089, 1095 (8th Cir. 1988)).  Basic contract law principles govern enforcement of a settlement agreement.  *Chaganti & Assocs., P.C. v. Nowotny*, 470 F.3d 1215, 1221 (8th Cir. 2006) (internal citations omitted).  Because the parties are before me based on diversity jurisdiction, Missouri law applies.  Under Missouri law, a party seeking specific performance of a settlement agreement bears the burden of demonstrating the existence of the agreement by clear, convincing, and satisfactory evidence.  *Vulgamott v. Perry*, 154 S.W.3d 382, 388 (Mo. Ct. App. 2004); *B-Mall Co. v. Williamson*, 977 S.W.2d 74, 77 (Mo. Ct. App. 1998).  To enforce a settlement agreement the parties must have reached agreement on the essential terms of the deal.  *Sheng v. Starkey Labs.*, 117 F.3d. 1081, 1083 (8th Cir. 1997).

- 6 -

Even if the parties have left some details for counsel to work out through further negotiation, a legal, valid settlement agreement still exists. *Id.* at 1083; *see also Nwachukwu v. St. Louis Univ.*, 114 Fed. Appx. 264 (8th Cir. 2004) (holding that a valid settlement agreement existed "even though the final agreement contained more expansive or additional clauses related to confidentiality, release of liability, disclaimer of fault, non-disparagement, and reinstatement or re-employment); *Vulgamott*, 154 S.W.3d at 388 (holding that "[a] contract will be valid and enforceable even if some terms may be missing or left to be agreed upon as long as the essential terms are sufficiently definite to enable the court to give them exact meaning."). "Once parties have settled a dispute and have agreed to settlement terms, the parties cannot rescind it." *BP Prods. North Am., Inc. v. Waillis Petroleum, L.C.*, No. 4:06CV1110 ERW, 2007 WL 1240261, at *2 (E.D. Mo. April 27, 2007) (citing *Caleshu v. Merrill Lynch*, 737 F.Supp. 1070, 1086 (E.D. Mo. 1990)). When a court decides a valid settlement agreement exists, it may order the parties to execute a settlement release as a species of specific performance. *Kenney v. Vansittert*, 277 S.W.3d 713, 722 (Mo. Ct. App. 2008).

It is undisputed that the parties reached a settlement in this case on June 2, 2011. The agreement addressed all essential term, including the total settlement amount and the apportionment of certain undisputed funds. I have already heard evidence at a hearing where all parties were represented. I have already decided a

- 7 -

valid settlement agreement exists.  Although the plaintiffs have not finally determined how to divide the disputed funds, the Agreement contains provisions for resolving these issues.  Because the parties have entered into a valid and enforceable settlement agreement they cannot rescind it or withhold their signatures, and I have the authority to order specific performance.

The July order required the parties to execute the Agreement and provide the executed copy to the defendants.  Although the order says the plaintiffs "shall receive respective portions of the settlement after their respective portions are determined," their respective portions of the undisputed funds have already been finally determined.  Once the Agreement is executed, its terms will require the defendants to distribute the undisputed funds within the specified time period.  All of the evidence in the record supports Miess's position, including the Agreement's language, the transcript from the settlement hearing, Miess and the other two fathers delivering their signatures, and the defendants' decision not to respond or object to this motion.  Miess has met her burden of demonstrating by clear, convincing, and satisfactory evidence that the parties reached a binding settlement agreement.  I will, therefore, grant Miess's motion to enforce the settlement order, and Huffman must execute the agreement forthwith.  Huffman must also pay Miess's reasonable attorneys fees of bringing this motion.

### Discovery Disputes

In December of 2009, I entered a Case Management Order, based on the Joint Proposed Scheduling Plan agreed to by all parties. The order required fact discovery to be completed by March of 2011, with expert discovery to be completed later.  At the request of the plaintiffs, I amended that order, allowing limited fact discovery after the original deadline.  Shortly after the second time I amended the schedule, the parties announced that the case had been settled. During our various discussions about the schedule, the parties never suggested that apportionment discovery should be conducted outside the schedule set in the case management orders.  Nevertheless, I believe the interests of justice require allowing limited discovery, so that the apportionments will have an appropriate evidentiary basis.

There are three different apportionment issues before the court.  Two relate to apportionment of the disputed sums arising from the deaths of the children fathered by Huffman and Scheider.  These apportionments are required by  the Missouri wrongful death statute, Mo. Rev. Stat. § 537.095 (stating that "the court shall apportion the settlement or recovery in proportion to the losses suffered by each person or party entitled to share in the proceeds.").   The third "apportionment" issue arises from the settlement agreement, and requires the court to distribute between Miess and Barton their respective portions of the  lump sum

set aside for their personal injury claims.  At the July 22 hearing, all counsel were optimistic that these issues could be resolved by negotiation, but, obviously, that did not occur.

After their mediation of the remaining issues failed, the fathers propounded requests for production of documents on Miess.  When Miess refused, a flurry of motions ensued.  The discovery seeks a wide variety of information going to Miess's medical condition, her ability to work, her parenting skills and fitness as a mother, and, to a lesser extent, the involvement of all three fathers in their children's lives.  Because the personal injury damages claims are before me, I agree that both Miess and Barton are entitled to additional discovery related to their medical conditions and their ability to work.  With two minor exceptions, I do not believe that either Schneider or Huffman are entitled to additional discovery related to the wrongful death apportionments.

I will order Miess to produce to Barton updated medical records since her last production, and I will order Barton to produce the same to Miess.  I will also order them both to produce any Social Security disability files that exist.  Finally, each must produce to the other records of employment in the five years before the accident until December 31, 2011.  These records must be sufficient to show their employers, the dates worked and whether the work was full time or part-time, and their income.  In order to save time and money, each side will produce their own

records to the other, instead of requiring releases and production from third parties, unless counsel agree to the contrary.

Although the settlement agreement referred to certain back child support amounts owed, I cannot tell from the record whether Miess is claiming that additional support is owed by either Scheider or Huffman. If she is, she must produce a sworn statement setting out the amount of child support she contends is owed and the basis for the calculation, unless this information has already been provided. Additionally, the discovery requests asked about life insurance. If Miess, Scheider, or Huffman had life insurance or accidental death policies or have collected any insurance relating to their deceased children, documents sufficient to show all amounts paid or to be paid must be produced.

Except as set out above, no further discovery will be allowed. All discovery set out here must be produced no later than **February 28, 2012**. If disputes arise about production of this limited discovery, counsel must meet and confer to attempt to resolve all issues. If resolution cannot be reached, then, after consulting with one another, counsel should call my chambers to set up a telephone conference.

Accordingly,

**IT IS HEREBY ORDERED** that Miess's motion to enforce the settlement order [#149] is granted; Huffman is ordered to deliver his signature to the

defendants within ten days of this order, and Huffman is ordered to pay to Miess's

counsel their reasonable attorneys fees in bringing the motion.

**IT IS FURTHER ORDERED** that the fathers' motions for a scheduling

order [#156], to compel  [#166], and for a pre-trial conference  [#172], and

Miess's motions for hearing [#159] and for protective order [#168] are denied

except as follows:

1.      Miess and Barton will produce to one another updated medical

records since their last production, any Social Security disability files that exist,

and records of employment for the five years before the accident until December

31, 2011, as described more fully above.

2.      If Miess is claiming back child support from either Scheider or

Huffman in addition to that listed in the settlement agreement, she must

produce a sworn statement setting out the amount of child support she contends is

owed and the basis for the calculation, unless this information has already been

provided.

3.      If Miess, Scheider, or Huffman had life or accidental death insurance

policies or have collected on any such insurance relating to their deceased

children, they must produce documents sufficient to show all amounts paid or to

be paid.

4.      All discovery ordered here must be produced by **February 28, 2012.**

5.      The Court will hold an evidentiary hearing to consider all remaining issues in this case on **Friday, March 16 at 9:00 a.m.**  The Court will set aside the full day for this hearing, and expects to enter a final judgment in the case at the conclusion of the hearing.  Counsel must therefore be prepared to present all evidence necessary and should bring with them proposed orders and judgment forms setting out all items that must be included under Mo. Rev. Stat. § 537.095 and for final resolution of this matter.




_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 8th day of February, 2012.